Robert I. Long, Esq.    SBN 114227
LAW OFFICE OF ROBERT I. LONG
674 County Square Drive, Suite 305
Ventura, California 93003
Tel: 805/642-0055  Fax: 866/594-9739
E-mail: 4long@usa.net
Attorney for Plaintiffs,
Judith Johnson, Alan Kaufman, Ronni Mendes

**FILED**

**DEC 2 8 2017**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:
Deputy Clerk

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

| | |
|---|---|
| IN RE: | ) Case No. 9:17-bk-10167-PC |
| PAULA SCHWARTZ, Debtor | ) Chapter 7 |
| JUDITH JOHNSON, ALAN KAUFMAN, and RONNI MENDES, | ) Adv. Proc. No. _____ |
| Plaintiffs, | ) Assigned Judge:  Hon. Peter H. Carroll |
| v. | ) |
| PAULA SCHWARTZ, Debtor; JERRY NAMBA, Chapter 7 Trustee, | ) **COMPLAINT OBJECTING TO DISCHARGE AND FOR DECLARATORY JUDGMENT** |
| Defendants. | ) [11 *USC* §523(A)(4)] |

Plaintiffs JUDITH JOHNSON, ALAN KAUFMAN and RONNI MENDES aver as follows:

### I. JURISDICTION

1.    This is an action to determine nondischargeability of a listed debt of Debtor and, as such, jurisdiction is based on personal jurisdiction over Debtor. This is a non-core proceeding and Plaintiffs consent to the entry of final orders or judgment by the bankruptcy judge. *FRCivP*, Rule 8(1); Bankruptcy Rule 7008.

### II. BASIS FOR CLAIM

2.    Plaintiffs allege that Debtor is not entitled to discharge of the debt owed to Plaintiffs, jointly and severally, in the sum of $199,469.60. Plaintiffs further aver that said obligation arose out of embezzlement by Debtor in her capacity as a fiduciary, while serving as Trustee of their parents' trust, and constitutes an exception to discharge under 11 *USC* §523(a)(4).

3. Plaintiffs make the averments set forth in Paragraphs 4 through 8 as required by *FRCivP*, Rule 9(b). Plaintiffs also attach a Declaration of Judith Johnson attesting to the defalcation of Defendant.

4. Plaintiffs aver that Debtor acted as Trustee of the Intervivos Revocable Trust of Leonard Schwartz and Shirley Kaufman Schwartz dated August 27, 1987 (herein "Trust"). At the time of establishing their trust, Leonard Schwartz and Shirley Kaufman Schwartz were married, the marriage constituting the second marriage for each of them, each of them having children from a previous marriage. Leonard Schwartz was the father of Plaintiffs Judith Johnson and Ronni Mendes. Shirley Kaufman Schwartz was the mother of Plaintiff Alan Kaufman and Debtor/Defendant, Paula Schwartz, who changed her surname following the marriage of Leonard and Shirley.

5. Leonard Schwartz died on March 19, 2008 and, at the time of his death, Shirley Kaufman Schwartz was exhibiting cognitive deficits. At approximately the date of Leonard's death, the Debtor/Defendant, Paula Schwartz assumed either de facto or actual office of Successor Trustee, taking over financial control of the assets of the Trust and her mother.

6. Plaintiffs aver that between March 19, 2008 and August 8, 2014, Debtor/Defendant embezzled more than $300,000 from the Trust.

7. On August 8, 2014, Plaintiff Judith Johnson, with the support of Plaintiffs Alan Kaufman and Ronni Mendes, filed a Verified Petition for Relief from Breach of Trust, to Compel an Accounting, for Declaratory Relief, and for Financial Elder Abuse as Ventura County Superior Court Case No. 56-2014-00456473-PR-TR-OXN.

8. By stipulation for dismissal incorporating the terms of a settlement agreement filed in the Ventura Superior Court action on March 17, 2015, Debtor/Defendant agreed to pay the principal sum of $160,000 to the Plaintiffs, Judith Johnson, Alan Kaufman and Ronni Mendes, or to their heirs and assigns, pursuant to which the State court action was dismissed with the Court reserving jurisdiction to enter and enforce a judgment pursuant to the agreed terms.

9. Following breach of the settlement, judgment was entered in the State court action on March 29, 2016 in the sum of $186,552.84 against Debtor/Defendant, Paula

-2-
COMPLAINT OBJECTING TO DISCHARGE AND FOR DECLARATORY JUDGMENT

Schwartz, and in favor of the Plaintiffs, Judith Johnson, Alan Kaufman and Ronni Mendes. Debtor/Defendant was represented by counsel in the State court action.

10.    On January 31, 2017 the Debtor/Defendant, Paula Schwartz filed a case for relief under Ch. 13 of the Bankruptcy Code as Case No. 9:17-bk-10167-DS.

11.    The obligation running in favor of Plaintiffs was secured by a deed of trust on the Debtor/Defendant's real property commonly known as 151 Heavenly Valley Road, located in the City of Newbury Park, County of Ventura, State of California. Said deed of trust was recorded on March 26, 2015 as Document No. 20150326-00044058-0, Official Records, Ventura County Clerk and Recorder. In her Ch. 13 plan, Debtor's arrearages on payments required of her pursuant to the settlement agreement was scheduled as a Class 2 claim, and Debtor/Defendant sought to make post-confirmation monthly payments on arrearages of the obligation, which Debtor/Defendant estimated at $15,022.00 as of the date she filed her plan, February 4, 2017.

12.    Post-petition payments totaling $4,500.00 were received by Plaintiffs, and Debtor made three plan payments totaling $788.24 to the Plaintiffs, which Plaintiffs have duly credited Debtor/Defendant in calculation of their demand amount of $199,469.60 as of January 31, 2017, the date on which the Ch. 13 case was commenced.

13.    On September 11, 2017 the Ch. 13 case was converted to the instant Ch. 7 case.

**WHEREFORE,** Plaintiffs pray for judgment as follows:

1.    For a judgment declaring that the obligation to Plaintiffs in the sum of $199,469.60 is nondischargeable pursuant to 11 *USC* §523(a)(4) as constituting a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

2.    For declaratory relief that the debt in favor of Plaintiffs constitutes an exception to discharge under the Code;

3.    For costs of suit;

4.    For such other relief as the Court deems just and proper in the circumstances.

Dated: __Dec 28__, 2017          _____
                                 ROBERT I. LONG, Atty. for Plaintiffs

– 3 –
COMPLAINT OBJECTING TO DISCHARGE AND FOR DECLARATORY JUDGMENT

## DECLARATION OF JUDITH JOHNSON

I, JUDITH JOHNSON, declare as follows:

I am a Plaintiff in this matter. The matters set forth in this declaration are known to me to be true except for matters stated on information and belief and, as to such matters, I have made a reasonable investigation and believe such matters to be true. If called as a witness I could and would testify competently to the matters set forth herein.

This action regards the Intervivos Revocable Trust of Leonard Schwartz and Shirley Kaufman Schwartz dated August 27, 1987, including a restatement and amendments. Leonard Schwartz was the father of me and my sister, Ronni Mendes. Shirley Kaufman Schwartz was the mother of the Debtor/ Defendant, Paula Schwartz, and her brother, Alan Kaufman. The Debtor was originally Paula Kaufman. Her married name was Paula Waxman. Following her divorce she began to go by Paula Schwartz, but to my knowledge my father, Leonard Schwartz, never adopted her.

My father died on March 19, 2008 and the other Trustor, Shirley Kaufman Schwartz, died on March 24, 2014. Following her death, the Trust assumed administrative status for the benefit of the four children:  Judith Johnson, Paula Schwartz, Alan Kaufman and Ronni Mendes.

Shirley was designated as sole Trustee following my father's death, but at least as far back as early 2008, Paula assumed the role of Co-Trustee with her. Shirley confided in me that Paula was controlling her finances and that she felt like she was losing control of her life.

Even before my dad died, Shirley was exhibiting signs of dementia. For example, prior to my dad's death, Shirley had swallowed a handful of pills intended for my dad.  She had just moments before put them in her hand to give to him.  She had to get her stomach pumped at the hospital.

My recollection is that it was not long after my father's death, when Shirley's driver's license was up for renewal, that Paula and I were extremely afraid that it was unsafe for Shirley to continue to drive. Even before dad died, Shirley's driving abilities had deteriorated to the point she was an unsafe driver. For example, she would change lanes without first checking to

– 1 –
DECLARATION OF JUDITH JOHNSON

see if the lane was clear. Paula and I both wanted her driver's license revoked.  Late one night Shirley drove for two hours past her home because, as she later told us, she heard voices telling her to keep driving.  She finally stopped at a stranger's house who was caring enough to let her into his house and contact us.  At Paula Schwartz' request, Shirley's personal physician wrote a letter to the DMV to inform them that she was not capable to drive and, thankfully, her license was not renewed.

My father and his wife were not wealthy, but they did own a home in Bermuda Dunes, California (in the Palm Desert area), and I am informed by Shirley and my dad, and on that basis allege, they had some investments including a GE Interest Plus Money Market account, a Fidelity Investment Fund (which may also have been known as National Financial Services LLC) account, a University Credit Union account number 0000352700, and a checking account in the name of the Trust at Wells Fargo Bank, account number 765283494. In addition to those investments, which I believe were owned by them jointly and were in the Trust or intended by them to be included in the Trust (as I was told by my Dad and Shirley and per both of their Wills), Shirley also had a University of California 403B retirement plan, account number 79025.

I am informed and believe, and on that basis allege, that the total value of their estate at the time my father passed away was about a half-million dollars, not including the value of their house. Both Leonard and Shirley were fairly frugal, managed their finances wisely and conservatively, and often expressed that they wanted to take care of all their four children, equally when they were gone.

After my father died, Paula was the first to go to the house in Palm Desert. When I inquired as to whether there was a Will or Trust, she replied that she found nothing. I was not provided with a copy of the Trust, the restatement of the Trust, or the amendments to the restated Trust until approximately November of 2013. Around that time I had received a letter from an attorney, Adrien Miller, demanding that I resign as Trustee in order to allow the sale of the Trust real property. I was unclear who the Trustee was. Until that time I had believed that the surviving Trustor, Shirley Kaufman Schwartz, was the only Trustee. Ms. Miller made it

– 2 –<br>DECLARATION OF JUDITH JOHNSON

sound like she represented Paula Schwartz, not Shirley. It was then that I demanded to see a copy of the Trust and Will. I further demanded to see medical certificates stating that Shirley was not mentally capable.

In response to my demand, I received a copy of the Trust as restated August 11, 1997. It showed I was to be co-trustee with Paula after Shirley could no longer serve. Also, around December 2nd or 3rd of 2013 I received un-notarized statements from doctors attesting to the disability and incapacity of Shirley R. Schwartz, including a Physician Certification from Samuel Lee, M.D., dated December 2, 2013, and a Physician Certification from Zetan (unable to read last name), M.D., license no. C55996, also dated December 2, 2013.

Out of anxiety based on the threats of the attorney that I would be sued if I did not cooperate in allowing the sale of the real property, I reluctantly signed the papers that allowed the sale of the house to close. When I inquired regarding where Shirley would now live, Paula advised that Shirley was in the Jewish Home for the Aged and was being kept drugged. Paula indicated that it was necessary to sell the house so that she would have funds to get Shirley out of where she was and put her somewhere better. I understood that the primary objective of the Trust was to take care of Shirley, so I did not give it another thought and assured Paula that I would cooperate as needed to see that Shirley got proper care.

Between December 2013 and March 2014 I spoke with Paula several times and exchanged e-mails requesting that I be allowed to see Shirley and Paula. Paula's response was that Shirley would cry and scream at even her own son, Alan, when he visited her, and it was best not to upset her with visits. Sometime in December 2013 I was informed that Paula moved Shirley into an assisted living home close to Paula's house in Newbury Park. When I tried to arrange a visit, however, it was never a good time; Paula always had an excuse, such as there were visitors and I would have to come at a different time.

Shirley died on March 24, 2014. She and my father had been married for over 20 years. I loved Shirley. Paula knew this, yet it was not until two weeks after Shirley had died, when I sent an e-mail indicating I was going to come out to Newbury Park to visit Shirley and Paula, that Paula had a close friend of hers inform me that Shirley had passed away.

– 3 –

DECLARATION OF JUDITH JOHNSON

After Shirley's passing, I knew that whatever was left in the Trust was intended to be distributed equally among the four children: me, Paula, Alan and Ronni. When I inquired as to what was in the Trust, I received evasive responses from Paula. She indicated that during her last months of life, Shirley "insisted" on using the Trust money to fix up Paula's home. I found that curious, since Paula had previously provided me with medical certificates testifying that Shirley no longer had capacity to function as Trustee.

I began demanding information regarding the Trust. Eventually, Paula provided me with bank records for Wells Fargo checking account number 76528394 titled in the name of "Shirley Schwartz TTE of the Invervivos Trust Paula Schwartz TTE" for the period December 1, 2013 through April 30, 2014. Those bank records disclosed that the proceeds from the sale of the home, totaling $252,429.47, were deposited into the account on December 17, 2013. As further shown in those records, Paula transferred funds from the Schwartz Trust bank account to her own bank account totaling $125,000, just during that five-month span. As shown in the statements for March and April 2014, this included $34,500 transferred out of the Leonard and Shirley Schwartz Trust to "Schwartz P Complete Advantage" *after Shirley's death!*

When I confronted Paula with these transfers, she was generally evasive. When I asked about all the other assets that Shirley and my father had also owned, she told me via e-mail on April 23, 2014, that when the house was being sold, Shirley went through everything and told Paula what she wanted to get rid of (interesting because Shirley was not competent). Paula had used a consignment service to sell some furniture and received $560. She said that the rest was either given away or donated and that she only had kitchen stuff and some clothes that she kept in a storage facility. She gave away one of my dad's two antique cherry wood armoires and still has the other one. Contrary to what she said regarding disposing of the personal property, I found out later that most of the household furniture and furnishings, excluding some furniture and some of my dad's things that were already sold, donated, or given away, were being kept in a large storage facility (Hollywood Storage) costing $277 per month.

At this point in time, early May of 2014, I discovered that there was only $100,082.16 left in the Wells Fargo accounts, and Wells Fargo Bank did not cooperate with me in freezing

– 4 –
DECLARATION OF JUDITH JOHNSON

those funds. After conferring with Alan and Ronni, and with their support and backing, I engaged a Ventura-based attorney, Robert I. Long, who filed an action in the Ventura County Superior Court entitled *In Re: Intervivos Revocable Trust of Leonard Schwartz and Shirley Kaufman Schwartz dated August 27, 1987/Judith Johnson, Petitioner v. Paula Schwartz fka Paula Waxman fka Paula Kaufman and DOES 1-10, Respondents* as Case No. 56-2014-00456473-PR-TR-OXN on August 14, 2014. By order entered September 3, 2014, the Ventura Court granted a preliminary injunction in my favor, freezing the remaining funds in the Wells Fargo account #765283494 pending further order of the Court.

Paula Schwartz was represented in the State Court action. Eventually, a settlement was negotiated in which the remaining funds in the Wells Fargo account, totaling approximately $100,000.00, were used to pay our attorney in the action and legal costs incurred, with the balance being divided between myself, Alan Kaufman and Ronni Mendes. The settlement further provided for a Promissory Note in the amount of $180,000.00 issued by Paula Schwartz in favor of myself, Alan Kaufman and Ronni Mendes, secured by a deed of trust against the Debtor's property at 151 Heavenly Valley Road, Newbury Park, California. We were also awarded cemetery plots owned but not used by the Trustors. The amounts represented by the Note and collected from the bank was much less than the amounts we believe were embezzled by Paula Schwartz while she acted as actual or de facto Successor Trustee of our parents' trust. However, we decided that the settlement was in our best interest after weighing the costs of proceeding to trial in the matter and the prospect for collecting an unsecured judgment.

We received only a few sporadic payments. Consequently, by ex parte application filed in the State Court on March 24, 2016, we applied for a judgment pursuant to the express terms of the Settlement Agreement, the State Court having reserved jurisdiction to do so. Pursuant to our application, the Ventura State Court entered a judgment on March 29, 2016, awarding the sum of $186,552.84 against the Debtor, Paula Schwartz, and in favor of myself, Alan Kaufman and Ronni Mendes. With interest, the judgment had grown to over $205,000.00 by the time the Debtor filed her Chapter 13 bankruptcy case on January 31, 2017. Giving her credit for plan payments and post-petition payments received from her after that date, and without charging

– 5 –
DECLARATION OF JUDITH JOHNSON

additional interest, the sum of $199,469.60 remains owed.

We respectfully request that the Court find that the amount owed to us by the Debtor is nondischargeable as amounts embezzled by her while she acted in the role of a fiduciary as de facto or actual Successor Trustee of our parents' trust.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is signed by me on December 27, 2017 at Norco, California.

_____
JUDITH JOHNSON

–6–
DECLARATION OF JUDITH JOHNSON

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS    Judith Johnson, Alan Kaufman, and Ronni Mendes, Individuals | DEFENDANTS   Paula Schwartz, Debtor, and Jerry Namba, Chapter 7 Trustee |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Robert I. Long, Law Office of Robert I. Long<br>674 County Square Dr., #305, Ventura, CA  93003<br>(805) 642-0055 | ATTORNEYS (If Known)  Andrew S. Mansfield, Mansfield Law Corporation<br>775 N. Ventura Rd., Suite 201, Oxnard, CA  93036<br>(805) 642-6406 |
| PARTY (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor      □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>☒ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor      □ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint Objecting to Discharge; Debtor embezzled funds from family trust while serving as fiduciary (trustee), to the injury of Plaintiffs.  11 *USC* §523(a)(4)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ 199,469.60 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| **NAME OF DEBTOR**   Paula Schwartz | **BANKRUPTCY CASE NO.**   9:17-bk-10167-PC | |
| **DISTRICT IN WHICH CASE IS PENDING**<br>California Central District | **DIVISION OFFICE**<br>Northern | **NAME OF JUDGE**<br>*Peter H. Carroll* |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISION OFFICE** | **NAME OF JUDGE** |

**SIGNATURE OF ATTORNEY (OR PLAINTIFF)**

| **DATE**<br>December _27_, 2017 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)**<br>Robert I. Long |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.